ROBERT SCOTT

*v.*

SIDNEY BEACH.

*Opinion filed April 21, 1898.*

1. TRUSTS—*what facts sufficient to create a resulting trust.* An executed parol agreement, whereby one party is to loan money to another for the purchase of land and take the title himself as security, creates a resulting trust, in the nature of a mortgage, in favor of the promisee, which equity will enforce upon payment of the amount due.

2. TENDER—*tender before suit is unnecessary where there has been an unconditional refusal to perform.* An actual tender by the plaintiff before suit is unnecessary, if the defendant has openly refused to perform his part of the agreement or declared his intention not to perform in any event, it being sufficient if the plaintiff is ready and willing and offers to perform by his pleadings.

3. COSTS—*apportionment of costs in proper cases rests with the chancellor.* The apportionment of costs in equity rests in the discretion of the chancellor in proper cases, and the exercise of that discretion will not be disturbed on appeal, in the absence of abuse.

APPEAL from the Circuit Court of Mercer county; the Hon. HIRAM BIGELOW, Judge, presiding.

This suit was begun in the circuit court of Mercer county, on the chancery side, by appellee, against appellant. The bill shows that on July 24, 1892, complainant made a verbal contract with Margaret J. Boden, the owner of certain lands, by which she sold the same to complainant for the sum of $4800, to be paid March 1,

1893, on making the deed of conveyance. Possession of the land was to be delivered September 1, 1892, the vendor reserving the crops for that year; that on or about the time of this purchase the complainant made a verbal agreement with appellant, whereby the latter was to advance the money necessary for the above purchase, as a loan to complainant, for the term of four years from March 1, 1893, with interest at the rate of seven per cent per annum, the real estate purchased to be conveyed to Scott as security for the loan; that complainant, Scott and the said Margaret J. Boden met on or about July 24, 1892, and carried out the above agreement, by Margaret J. Boden deeding the land to Scott and the latter paying the purchase price; that complainant took possession of the land and has resided thereon ever since, being still in possession, and has made valuable and permanent improvements upon the land; that Scott, at the time the deed was made to him, promised, and many times since has promised, to give complainant a contract to convey the land to him on payment of said loan and interest; that complainant paid Scott, in money, board and labor, a total of $1367.39, all of which was payment on the loan; that Scott denies that complainant has any interest in said property or that he ever made said contract of loan to complainant, and that complainant is unable to get a settlement with him. The prayer is for an accounting between the parties, and to have the contract established by a decree of court. The bill showed a readiness to pay any deficit found against complainant upon the hearing.

Defendant answered, denying that he ever loaned or agreed to loan any money to complainant as stated in the bill, and alleged that he purchased the land in question for his own use, in fee simple, and that he never had any contract with complainant concerning it, except to lease it to him from year to year; denied his liability for the items alleged in the bill, and averred that all payments made by complainant to him for five years prior

thereto were made on account of rent due him.   He also set up the Statute of Frauds as an additional defense.

On April 28, 1897, complainant filed a supplemental bill, showing that since the filing of the original bill the loan to complainant by defendant had matured, and averred that he was ready and willing to pay the amount due when ascertained by the court, and prayed that defendant be decreed to convey the land to him upon payment of the amount due by a short day to be fixed by the court.

A final decree was rendered October 11, 1897, sustaining the report of the master, finding, in substance, that the allegations of the bill were true; also, that complainant owed the defendant on the loan the sum of $5296.36; that complainant had not fully paid the interest as it fell due, in accordance with the terms of the contract, and that he did not tender the sum due on March 1, 1897, when the principal matured.   The court decreed that complainant pay defendant the amount due within ninety days, with five per cent interest from date of the decree, and pay the clerk of the court defendant's costs herein, and that defendant, on such payments being made, convey the land to complainant by quit-claim deed, with covenants against his own acts; that should Scott refuse to accept the money and make the deed, then complainant, within ninety-one days, to pay such money to the master and pay the costs aforesaid, whereupon the master shall convey to complainant the defendant's interest in the land; that complainant pay his own costs, and if he fails to pay the money due, and costs, as above decreed, that the bill be dismissed and complainant pay all costs.

JAMES M. WILSON, and SCOTT & COOKE, (JOHN MORDOCK, of counsel,) for appellant.

BASSETT & BASSETT, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The decision of the trial court was evidently based upon the theory that appellant loaned the money to appellee to purchase the land in controversy and took title to the same in himself as security, thus creating a resulting trust in favor of appellee by way of a mortgage, and if the evidence sustains this theory there can be no question as to the correctness of the decision. *Reeve* v. *Strawn,* 14 Ill. 94, was a similar case. There Strawn purchased certain lands, as Reeve, the complainant below, claimed, with an agreement that Reeve should be allowed to pay the amount of the purchase money, and interest, and have a conveyance of the premises. He insisted Strawn agreed to loan him the money to make the purchase and take a deed to himself, by way of mortgage, to secure its repayment, and that the money paid for the land was that so loaned. Strawn denied that there was a loan, and insisted that he paid his own money, and bought the land in his own name for his own use, and that any agreement between the parties was by parol, for the sale of the land to Reeve after he should have purchased it. CATON, J., delivering the opinion of the court, there said (p. 96): "There can be no serious controversy about the law in this case. If the facts are as insisted by the complainants, then a resulting trust is created, in the nature of a mortgage, and there can be no doubt about the right of the complainants to redeem; but if, on the other hand, there was no loan of the purchase money and Strawn paid his own funds for the land, no parol agreement between the parties that Strawn should purchase for the use and benefit of Reeve, or that Reeve should at any time have the right to purchase it, will entitle the complainants to the relief sought, for then it is nothing but a simple parol agreement for the sale of land, which is at once cut off by the plea of the Statute of Frauds, which has been interposed. The serious question in the case, then, is one of fact." See, also, *Davis* v. *Hopkins,* 15 Ill. 519; *Klock* v.

*Walter*, 70 id. 416, and cases there cited; 2 Pomeroy's Eq. Jur. 1073.

The question is whether or not the evidence is sufficient to establish the fact that a loan was negotiated between the parties. It is necessary that appellee should have established that fact by clear and satisfactory proof. Appellant admits that appellee first told him the land was for sale and wanted to borrow money from him with which to buy it, but the loan was refused. He further testified that he and appellee and Mr. and Mrs. Boden met at the office of W. C. Austin, a justice of the peace, in New Boston, in July, 1892, when he paid for the land and the Bodens deeded the same to him, and that he, at or about that time, leased the place to appellee from year to year, at a rental based on seven per cent of the purchase price. Appellee testified that he had negotiated for the purchase of the farm before applying to appellant for a loan; that appellant agreed with him that he would advance the money on credit to pay for the land, and take title in himself as security; that they met, pursuant to the request of appellant, (which appellant does not deny,) at Austin's store in July, 1892; that when the transaction was completed he requested a contract to convey from appellant, but the latter put him off, saying it was late and the matter could be attended to some other time. The last remark was also testified to by Austin. Bert Beach, son of appellee, testified to a conversation between appellant and appellee before the purchase, in which appellant told appellee to arrange a meeting at Austin's office and he would assume the obligation and give appellee a bond for deed; also to a conversation after the purchase, in which appellant recognized that appellee owed him the amount of the purchase price and interest at seven per cent. Five witnesses, apparently disinterested, testified to remarks made by appellant to them after the purchase of the land, tending very strongly to corroborate appellee and prove that he was the equitable owner

of the land, and that appellant held it as security for a loan of the purchase money advanced. Appellant testified that he was not to have possession, under the terms of the sale, until March 1, 1893, but that Beach was to have possession in the meanwhile. Beach did take possession in September, 1892, and has had possession ever since, and with the knowledge of appellant has made valuable and permanent improvements on the same. Our conclusion is, that the chancellor was fully justified in his finding of the facts in favor of appellee.

As to complainant's failure to tender the amount due, the law is well settled to the effect that it was not necessary. "An actual tender by the plaintiff before suit brought is unnecessary, when, from the acts of the defendant or from the situation of the property, it would be wholly nugatory—a mere useless form. If, before or at the time of completion, the defendant has openly and avowedly refused to perform his part, or declared his intention not to perform at all events, then the plaintiff need not make a tender or demand its performance before bringing suit. It is enough that he is ready and willing and offers to perform in his pleading." Pomeroy on Contracts, secs. 360-365. See *Lyman* v. *Gedney,* 114 Ill. 388; *D'Wolf* v. *Pratt,* 42 id. 198; *Clark* v. *Weis,* 87 id. 438; *Thayer* v. *Star Mining Co.* 105 id. 540.

Appellee assigns cross-errors to that part of the decree compelling him to pay defendant's costs. It is a matter of discretion with the chancellor to apportion the costs of a suit in equity in proper cases, and while we would have been better satisfied with the decree below if it had allowed the costs to be paid by the unsuccessful party, we are not inclined to hold that there was such an abuse of discretion as should work a reversal or modification of the decree.

The decree will be affirmed.          *Decree affirmed.*