**Frank W. Shultz, Appellee, v. Isaac Miller Hamilton and William Moore, Appellants.**

## Gen. No. 26,594.

1. CORPORATIONS—*prerequisites to enforcement of agreement to repurchase stock and bonds.* Where plaintiff purchased certain bonds and stock, under an agreement by defendants to take up and purchase such bonds and stock within 2 years for an agreed price, it was necessary for him, before defendants could be put in default, to prove notice of his election to resell, ability and readiness to perform, and performance on his part, including a tender of the securities, unless such tender was waived.

2. CORPORATIONS—*waiver of tender of stock and bonds under agreement to repurchase same.* In a suit upon a contract by defendants to repurchase certain bonds and corporate stock, undisputed evidence that plaintiff demanded, both orally and in writing, payment for the securities, which was refused, and that he threatened to bring suit and was told by defendants to "go ahead," was sufficient to show waiver of tender.

3. TENDER—*waiver by refusal to perform contract.* A tender is not required before bringing suit where defendants have openly and expressly refused performance.

4. MORTGAGES—*right of purchaser of secured bonds to recover on contract for reimbursement if a deficiency occurred on foreclosure.* The purchase of bonds secured by a trust deed, under an agreement that, in case the trust deed should be foreclosed and the proceeds should be insufficient to pay the amount due to plaintiff, defendants would pay to him the difference, was entitled to recover under such agreement where the proceeds of foreclosure were insufficient to make any payment to bondholders.

5. EVIDENCE—*records of court of another State to prove foreclosure.* In a suit based upon an agreement by defendants to make up any deficit upon corporate bonds that should arise upon foreclosure of the trust deed securing them, the records of the court of another State, where the property was situated and the foreclosure was had, were competent to prove the foreclosure proceedings.

6. APPEAL AND ERROR—*nonprejudicial error when judgment was only one that could be rendered.* Errors, if any, cannot be said to be prejudicial to appellants when it is clear that the judgment, upon the facts which are conceded regardless of those which are in dispute, is the only one that could properly be rendered.

Appeal from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1920. Affirmed. Opinion filed November 29, 1921. Rehearing denied December 21, 1921. *Certiorari* denied by Supreme Court (making opinion final).

CHARLES A. ATKINSON, JOSEPH P. MAHONEY and CHARLES J. O'CONNOR, for appellants.

ZANE, MORSE & MARSHALL, for appellee.

MR. JUSTICE MORRILL delivered the opinion of the court.

There was a former appeal in this case which was heard at the March term, 1913, and the judgment of the circuit court was reversed and the case remanded. *Shultz v. Hamilton,* 189 Ill. App. 396. The original declaration consisted of three counts, each of which was held insufficient to sustain a recovery for reasons

which were fully stated in our former opinion and which it is unnecessary to repeat. Subsequently additional pleadings were filed by the respective parties in conformity with the views expressed in our former opinion. A new trial has been had before a jury in the circuit court, resulting in a judgment for the plaintiff and against defendants for $40,585.95, a reversal of which is now sought by the appellants, who were defendants in the court below.

The action is based upon an alleged breach of a written contract dated June 10, 1908, between the parties to this suit and others who are not involved, in the present appeal. It is admitted that under a prior agreement between Shultz and Hamilton, two of the parties above named, dated April 4, 1908, Shultz purchased from Hamilton $25,000 in amount of the bonds of the Big Horn Basin Development Company, a Wyoming corporation, for which he paid $23,750, together with certain accrued interest. He also received a certificate for 25,000 shares of the par value of $1.00 each of the capital stock of another corporation, which was given to him as a bonus on the bond purchase. The bonds in question were dated January 1, 1905. They formed part of an issue of $750,000, bearing interest at the rate of 6 per cent per annum. At the time the contract of June 10, 1908, was executed, Shultz had the right, under the prior agreement of April 4, to return the bonds and stock and receive the purchase price which he paid for them, including accrued interest, but, by the later contract, he agreed to retain the securities and waive his right to return the same and to cancel the prior agreement. The appellants and others by the agreement of June 10, 1908, agreed in substance:

1. To guarantee the payment of the interest on the bonds as the same fell due and in default of payment thereof by the company to pay the interest as long as Shultz remained the holder thereof.

2. To take up and purchase said securities and to pay for the same the said sum of $23,750, with accrued interest on said bonds at the expiration of 2 years after the date of the contract, subject to certain rights which were reserved to Shultz of exchanging the securities for other securities or evidences of indebtedness of the company, or to sell the bonds and stock in question, in which latter event appellants should be relieved from liability on account thereof.

3. In case the trust deed securing said bonds should be foreclosed before the expiration of said 2-year period and the proceeds resulting from such proceedings be insufficient to pay the purchase price agreed upon, then appellants should pay to Shultz the difference or deficit, reserving to them, however, the right to make such repurchase before the expiration of said 2 years.

Default was made by the company in the payment of interest on its bonds shortly after the contract of June 10, 1908, was executed. In consequence of such default the trustee named in the trust deed securing the bonds brought foreclosure proceedings, a receiver of the company's property was appointed and a decree of foreclosure entered on May 5, 1909. The property of the company was sold under said decree on December 2, 1909, and on November 29, 1910, a deed was executed and delivered to certain persons as trustees for sundry bondholders. Sundry arrangements were made for the reorganization of the company which were subsequently abandoned and the reorganization agreement surrendered before the sale. Under this agreement the bondholders consenting thereto were required to deposit their bonds with the Colonial Trust & Savings Bank of Chicago as a depositary. Shultz did not sign the agreement, but on February 21, 1909, at the request of the defendants, deposited his bonds with said Colonial Trust & Savings Bank.

A meeting of some of the bondholders was held on November 20, 1909, at which a committee was appointed

to raise a fund to be used in purchasing the property at the foreclosure sale for the benefit of those who should contribute to the fund. Notice of the appointment of this committee and the surrender of the reorganization agreement was sent to the bondholders. Several bondholders, including Shultz, contributed 5 per cent of the par value of their holdings and the committee as trustees purchased the property at the foreclosure sale for $50,000, receiving a deed therefor. This sum was expended in the payment of the foreclosure costs and in satisfying prior liens. The purchasers formed a new corporation called the Soshone River Canal Company. The property was conveyed to that company and the stock of the company was issued dollar for dollar to the contributing bondholders. Shultz received a certificate for 250 shares, dated July 26, 1912, which was some 2 years after the commencement of this suit. At the trial Shultz tendered to the defendants this certificate of stock, together with the receipt of the Colonial Trust & Savings Bank for the bonds in question and the certificate of stock which he had received as a bonus, offering to indorse and transfer the same, but no actual tender of these securities was made before the trial.

Shultz made frequent demands from appellants for the payment of interest on his bonds, which were refused. Several letters were sent by him to the defendants requesting the purchase of the bonds at the price agreed upon. A short time prior to the commencement of suit, plaintiff had telephone conversations with both defendants and demanded the payment of the bonds and interest. These demands were unavailing and the defendant Hamilton told plaintiff to "go ahead" with any suit that he might have in view on account of the matter.

Under our former decision the case was reversed and remanded on account of defects in plaintiff's pleadings, which were indicated in detail and consisted sub-

stantially in the failure of plaintiff to plead the waiver by defendants of a tender of the securities, which would be essential before the plaintiff could recover under the provision of the contract whereby defendants agreed to purchase said securities within 2 years from the date of contract; also the further failure of plaintiff to set forth the contract in his pleadings. It is sufficient to say that these defects have been remedied by subsequent pleadings, so that the case is now before us for consideration upon the merits.

The language of the agreement of June 10, 1908, is clear and explicit upon the subject of the repurchase of the securities in question. It provides, in substance, that within 2 years after its date the parties of the first part, including appellants, will take up and purchase the bonds and stock in question for the sum of $23,750, with accrued and unpaid interest on said date, subject to certain rights which might be exercised by the plaintiff as hereinbefore noted. As indicated by our prior opinion, before defendants could be put in default it was necessary for plaintiff to prove notice of his election to resell the securities, ability and readiness to perform, and performance on his part as alleged in the declaration. Complete performance on the part of the plaintiff involved a tender of the securities unless such tender was waived. "Plaintiff could not plead performance and recover under waiver of performance." *Expanded Metal Fireproofing Co. v. Boyce,* 233 Ill. 284; *Schillinger Bros. Co. v. Thompson-Starrett Co.,* 171 Ill. App. 319.

The undisputed evidence shows that on numerous occasions plaintiff demanded, both orally and in writing, payment for the securities, which was refused by the defendants. These communications culminated in the suggestion by plaintiff that in case of further refusal he would be obliged to bring suit, to which Hamilton replied, "Go ahead," and plaintiff went ahead by commencing suit on July 27, 1910. Similar

refusals to pay were made by both defendants in the most explicit manner.

Under such circumstances we are obliged to hold that the necessity of a tender was waived. It is obvious that a tender would have produced no different result, and the law does not compel the doing of a useless act. The defendants clearly indicated their intention not to perform by their explicit refusal to repurchase the securities, and therefore became liable without the performance by plaintiff of a futile act of tender. 2 Williston on Contracts, 767. This rule has been recognized repeatedly by our Supreme Court with reference to transactions of a similar character in holding that an actual tender is not necessary where it is evident that such tender would be a mere useless form. A tender is not required before bringing suit where defendants have openly and explicitly refused performance. *Osgood v. Skinner*, 211 Ill. 229; *Scott v. Beach*, 172 Ill. 273.

It is also urged that the defendants became liable to pay to plaintiff the agreed price of the stock under the third paragraph of the agreement, which provided, in substance, that in case of a foreclosure of the trust deed in question and the sale of the property under such proceedings, the plaintiff should be entitled to receive out of the proceeds of the sale an amount equal to the sum of $23,750 and accrued interest, being the price specified in the second paragraph of the agreement, and in case such proceeds should be insufficient to make such payment to appellee, then the appellants should pay to him the difference or deficit. As already stated, there was a sale under such foreclosure proceeding, but the proceeds were insufficient to enable any payment whatever to be made to the bondholders. The foreclosure proceedings were proved by means of a transcript thereof from the Wyoming court in which they were conducted, and it is admitted that the proceeds of the sale were disbursed in the

Shultz v. Hamilton et al., 223 Ill. App. 64.

payment of costs and prior liens, so that the bond-holders received no money therefrom. Numerous objections of a more or less technical character were made by appellants to the evidence relating to this foreclosure, and it is contended by them that no recovery could be had under the deficit provision of the agreement of June 10, 1908. We do not regard this contention as meritorious. The records of the Wyoming court were competent to prove the proceedings. *Forrest v. Fey*, 218 Ill. 165. It is not seriously disputed that there was a foreclosure sale and a deficit. We find no reversible error in the record on the part of the trial court either in rulings upon evidence or in giving or refusing instructions.

Some weight must be given to the fact that on two different trials the jury have found in favor of the plaintiff, and the facts shown in the record, about which there is no dispute, are sufficient to sustain the verdict of the jury. The errors, if any, cannot be said to be prejudicial to appellants when it is clear that the judgment upon the facts which are conceded, regardless of those which are in dispute, is the only one that could properly be rendered. *Heckle v. Grewe*, 125 Ill. 58.

The judgment of the circuit court is therefore affirmed.

*Affirmed.*

GRIDLEY, P. J., and BARNES, J., concur.