RICHARD J. R. CAINES *vs.* CHARLOTTE L. SAWYER & another.

SAME *vs.* SAME.

SAME *vs.* SAME.

Suffolk.    November 20, 1923. — April 7, 1924.

Present: RUGG, C.J., CROSBY, PIERCE, & CARROLL, JJ.

*Equity Pleading and Practice*, Appeal; Master: findings and inferences, motion to recommit report, exceptions to report; Answer. *Trust*, Resulting. *Equity Jurisdiction*, Plaintiff's clean hands. *Corporation*, Transfer of shares of stock.

In dealing, upon an appeal from a final decree in a suit in equity, with inferences of fact drawn by a trial judge from facts found by a master, this court stands as did the trial judge and is not bound by such inferences.

One, who transferred shares of stock in a corporation to another because he feared that his wife might attempt to reach the shares under some legal process in divorce or other proceedings, cannot maintain a suit in equity to require a return of the shares after the settlement of divorce proceedings between him and his wife, either on the ground that he is entitled to them by reason of a resulting trust or for any other reason, since a court of equity will not lend its aid to relieve a party from the consequences of his fraud, but will leave him where his fraudulent undertaking has placed him.

The transfer of title to personalty is largely a question of intent.

In a suit in equity to require the defendant, a woman, to convey to the plaintiff shares of stock in a corporation which was formed in reorganizing another corporation, it appeared that shares of stock in the earlier corporation had been transferred by the plaintiff to the defendant in accordance with a fraudulent scheme of the plaintiff to place them beyond the reach of his wife in proceedings that she might institute against him, and a master found that at the time of the reorganization it was agreed and understood between the plaintiff and the defendant that thereafter each should own one half of the common stock and that two hundred shares issued to the defendant were issued in pursuance of that agreement and were the defendant's property. *Held*, that the plaintiff was not entitled to the conveyance sought by him.

At the hearing of the suit above described, the plaintiff contended that the defendant's answer was not sufficient to permit proof of the reorganization of the corporation and the issuance to her of the shares of stock as her own property; but it appeared that certain paragraphs of the answer adequately and effectively raised all subsidiary issues as to how, when, and in what way the defendant became the owner of the shares at the various times when she contended that she owned them, and it was *held*, that the issue of the ownership of the stock originally as well as at the time of the reorganization plainly was raised.

BILL IN EQUITY, filed in the Superior Court on June 21, 1920, and afterwards amended, against Charlotte L. Sawyer, " otherwise known as Charlotte Loud," and The Caines College of Physical Culture, Inc., to establish an alleged title of the plaintiff to two hundred shares of the common stock of the defendant corporation standing on its books in the name of the defendant Sawyer. Also, a

BILL IN EQUITY, filed in the Superior Court on July 16, 1920, by the same plaintiff against the same defendants to enjoin the defendant Sawyer from enforcing payment of a promissory note of the plaintiff for $1,200 held by the defendant corporation and secured by certain shares of stock owned by the plaintiff in the defendant corporation. Also, a

BILL IN EQUITY, filed in the Superior Court on July 16,

1920, by the same plaintiff against the same defendants to enjoin the defendant Sawyer from enforcing the payment of a promissory note of the plaintiff to one Goddard for $1,000, secured by shares of the stock of the defendant corporation owned by the plaintiff, which note the defendant Sawyer was alleged to have acquired " in some manner not known to the plaintiff; " for an accounting as to the indebtedness of the defendant Sawyer to the plaintiff; and for a decree that the defendant Sawyer be ordered to deliver to the plaintiff the said shares of stock originally given to secure the payment of the note.

The defendants severally demurred to the second and third bills. The demurrers were heard by *Sisk*, J., and were overruled. The defendants appealed.

The three suits then were referred to the same master. It appeared that the common stock of the defendant corporation was of the par value of $25 per share. Other material findings by the master are described in the opinion. The defendant Sawyer requested the master to rule (1) that it was open to her under the pleadings to prove that at the time of the reorganization of the defendant corporation the plaintiff did not intend to require her " to turn over to him the two hundred shares then issued to her but intended that thereafter each should own an equal amount of the common stock; " that she " had performed valuable services in assisting to put the business upon a profitable basis and in making the stock of the corporation of value and it was his intention to marry her when he was free to do so; . . . that, although the two hundred and one shares were transferred to her, in October, 1908, for the purposes before related, the issuing of the two hundred shares was not in carrying out that purpose but those shares were issued to her with the assent and approval of the plaintiff in consideration of what she had done in making the business successful and in consideration of the relations which then existed between them and that it was then understood that each should thereafter have an equal interest in the business, and that the certificates of stock issued in the reorganization represented ownership thereof; " (2) " that the testimony of the defendant on

cross-examination to the effect that she did not claim title to the stock by gift but by purchase in 1908 does not constitute a waiver of her right to contend that as a consequence of the reorganization in 1911 she became the absolute owner of the two hundred shares of the common stock issued to her at said time;" and (3) "It is open under the pleadings for the defendant to contend on the evidence, that regardless of her title to the stock in question prior to the reorganization, as a consequence of the reorganization and as the legal effect thereof, she became the absolute owner of the two hundred shares of common stock issued to her at said time."

The defendant Sawyer excepted to the report by reason of the failure of the master to give the rulings above described, and also for the following reasons:

"7. For that the master ruled that, because of the testimony of this defendant that she did not claim that there was a gift to her of the stock and stands upon her contention that she purchased two hundred one shares and paid for them in October, 1908, it was not open to him to make the finding contained in his original draft report, as to the reorganization in 1911 and the circumstances under which the two hundred shares of stock were issued to this defendant.

"8. For that the master ruled that it was not open to him under the pleadings in this case to make the finding contained in his original draft report in reference to the reorganization in 1911 and the circumstances under which the two hundred shares of stock were issued to this defendant.

"9. For that the master ruled in dealing with this defendant's requests concerning the reorganization in 1911 and the issue to this defendant at that time of two hundred shares of stock, as follows: ' In addition to my doubt as to whether the issue is raised by the pleadings the defendant Sawyer having stated while testifying during the course of the hearings, that she did not claim that there was a gift to her of the stock and stands upon her contention that she purchased the two hundred one shares and paid for them in October, 1908, I rule that it is not open to me to make the finding and I decline to make it for that reason.' "

The defendant Sawyer also moved that the report be

recommitted to the master. The motion to recommit was heard by *Sisk,* J., and by his order an interlocutory decree was entered denying it, from which the defendants appealed.

The exceptions were heard by *Hammond,* J., by whose order there were entered an interlocutory decree sustaining the exceptions above set out and recommitting the report for further findings. The plaintiff appealed from this decree. After the filing of a supplemental report by the master, the suits again were heard by *Hammond,* J., and by his order there were entered final decrees dismissing the bills with costs. The plaintiff appealed.

*J. B. Studley,* (*E. E. Ginsburg* with him,) for the plaintiff.

*G. R. Farnum,* for the defendants.

CROSBY, J. These are three bills in equity, the first to establish the plaintiff's rights in two hundred shares of stock of the corporate defendant and for other relief based upon the existence of such rights; and the second and third to enjoin the collection of two notes, one for $1,200 and one for $1,000, made by the plaintiff, as to which he contends that by reason of his alleged rights in the stock described in the first bill he has an equitable defence. The cases were referred to a master who made a report; and, certain exceptions of the defendant to that report having been sustained, it was recommitted to the master " to find and report all the facts not already reported and embodied as findings in his report relating to the issue to the defendant Sawyer of the two hundred shares of common stock of the defendant corporation at the time of the reorganization thereof, and all other facts which relate to the question of the ownership of said stock." The master thereafter filed a supplemental report, and the case was then heard by a judge of the Superior Court who filed a " Memorandum and Order for Decrees." The evidence before the master is not reported. The cases are before this court upon the appeal of the plaintiff in each case from the final decree dismissing the bill, the plaintiff's appeal from the decree sustaining certain exceptions of the defendant, and from the order recommitting the report.

In dealing with the inferences of fact drawn by the trial

judge from the master's report, this court stands with reference to the facts found and the power to draw inferences as did the trial judge, and is not bound by the findings made by him as all the facts are to be found in the report. *Harvey-Watts Co.* v. *Worcester Umbrella Co.* 193 Mass. 138. *Mansfield* v. *Wiles,* 221 Mass. 75, 84. *Glover* v. *Waltham Laundry Co.* 235 Mass. 330, 334.

It appears from the master's report that, in 1907, the plaintiff organized the defendant corporation under the laws of the State of Maine with a capital stock of $10,000, consisting of four hundred shares of the par value of $25 each, for the purpose of conducting the business of teaching physical culture, which business he had established in Boston. In that year, the defendant Sawyer — then the wife of one Loud — entered the employ of the corporation as clerk, and later was also an instructor. In December of the same year she purchased eight shares of stock in the corporation from the plaintiff, and was elected a director and clerk. Soon after her employment by the defendant corporation she separated from her husband, and the plaintiff separated from his wife; the plaintiff and the defendant Sawyer began living in the same apartment and continued living together in various places in and about Boston until the fall of 1916, when they became involved in a quarrel and did not thereafter live together.

On or about October 7, 1908, a certificate of two hundred and one shares of the defendant corporation, standing in the name of the plaintiff and consisting of a majority and a controlling interest, was transferred by him to the defendant Sawyer; although this certificate was not transferred on the books of the corporation until the reorganization in 1912, it remained in her possession and she dealt with it as owner. The plaintiff contends, and the master found, that the two hundred and one shares were transferred to her for the purpose of preventing the plaintiff's wife reaching it in legal proceedings, and that the defendant Sawyer agreed to return it to him after he had secured a divorce from his wife. Upon this question the master made the following finding: " In the course of her cross-examination as a witness, the

defendant Sawyer stated she does not claim that there was a gift of the stock to her, but stands upon her contention that she purchased the two hundred and one shares and paid for them in October, 1908. The pleadings do not raise any issue of a gift of the stock by the plaintiff to her and there was no evidence that anything was said between them, at any time, relative to a gift thereof. From all of the evidence I find that, at the time of the transfer of the two hundred and one shares of stock, the defendant Sawyer did not pay for them and further find that the certificates were indorsed over to her because the plaintiff feared that his wife might attempt to reach them under some legal process and that the defendant Sawyer agreed to return them to him after he had secured a divorce from his wife." This finding is not inconsistent with the other findings of the master or with those made by the court. The plaintiff contends that by reason of these findings a resulting trust was created in his favor which he is entitled to enforce. There is no doubt that the transfer was a fraud upon the plaintiff's wife. *Livermore* v. *Boutelle*, 11 Gray, 217. *Chase* v. *Chase*, 105 Mass. 385. *Doane* v. *Doane*, 238 Mass. 106. It is plain that the express agreement to return the stock cannot be enforced because it discloses upon its face the fraudulent character of the transaction. *Lufkin* v. *Jakeman*, 188 Mass. 528, 532. *Verne* v. *Shute*, 232 Mass. 397. *Dunne* v. *Cunningham*, 234 Mass. 332. Upon the facts disclosed in the present case the plaintiff cannot have a resulting trust established in his favor, nor is he entitled to any form of equitable relief. The decision in *Lufkin* v. *Jakeman* is not applicable to a case of this kind where the plaintiff is obliged to rely upon his fraudulent scheme to defraud his wife to obtain the relief which he seeks.

A court of equity will not lend its aid to relieve a party from the consequences of his fraud but will leave him where his fraudulent undertaking has placed him.

The master further found that in 1912 there was a reorganization of the corporate defendant; that immediately upon such reorganization the stock was held as follows: seven shares by the defendant Sawyer; two hundred and

one shares by the plaintiff, certificates therefor having been indorsed by him to the defendant Sawyer in 1908, under the agreement above referred to; and the remaining one hundred and ninety-two shares by various persons, to whom they had been transferred by the plaintiff. " Under advice of counsel, a scheme of reorganization was arranged under which $25,000 of preferred stock was to be issued in addition to the $10,000 of common stock and all of the holders of common stock except the defendant Sawyer were to be given an equal number of shares of preferred stock in exchange for their shares of common stock, and by vote of the directors, the plaintiff was to be given $5,000 of the common stock in payment for his services in selling $10,000 of the preferred stock to new stockholders. Under this arrangement, the defendant Sawyer returned to the corporation the certificates for the seven shares remaining of her original purchase of eight shares, and the certificates for two hundred and one shares which she had received in October, 1908, but which she had not theretofore presented for transfer on the books of the corporation, and new certificates were issued to her, under date of April 2, 1912, for two hundred shares of the common stock and eight shares of the preferred stock. After the remaining shares of common stock had been returned and certificates of the new preferred stock had been issued in their place, and the plaintiff had succeeded in selling $10,000 of the preferred stock, two hundred shares of the common stock were issued to the plaintiff, leaving the stockholders two hundred shares of common stock each in the name of the defendant Sawyer and the plaintiff and the shares of the preferred stock in the names of various persons. The voting power is in the common stock only."

The master found that up to the fall of 1910 the plaintiff devoted all his time to the business; that about that time he took a full course of medical instruction in Tufts College receiving a degree of doctor of medicine in 1914; that he was appointed instructor in the medical school connected with the college and acted as such during the college years of 1914 and 1915; that during those years he was not able

to give more than two or three hours a day to the business of the corporation; that from the time the defendant Sawyer first entered the employ of the corporation she has "devoted her entire time to the business and not only has had charge of the administrative work, but has also become proficient in the work of instruction and has had charge of the classes for women. She is a woman of marked business ability and of pleasing personality and the success of the business is attributable to a large degree to the ability which she has demonstrated."

The master in his draft report found that at the time of the reorganization the defendant Sawyer was thereafter to hold in her own right the two hundred shares which she then received in substitution for those originally transferred to her. This finding was withdrawn upon consideration, the master deeming the question not open under the pleadings, and further deeming the defendant Sawyer precluded from raising the question by reason of her testimony that there was no gift of the stock in 1908; he also found against the defendant on her contention that the original transaction was a sale to her. She then moved to amend her answer so as to raise more particularly the issues arising out of the reorganization; this motion was denied. Thereafter she moved to recommit the report, which motion was allowed, and the master was directed to make further findings. The plaintiff appealed from the interlocutory decree sustaining certain exceptions to the report and to the order of recommittal.

The supplementary report contains additional findings of fact relative to the reorganization, and the master annexed to the report the defendant Sawyer's testimony given on this question at the rehearing. The findings so made were warranted upon the reported evidence. The master made no explicit, definite finding upon the question of ownership of the two hundred shares as the result of the reorganization. The trial court made the ultimate finding of fact as matter of inference from the master's report that at the time of the reorganization the agreement between the parties contemplated that the defendant should own outright the

two hundred shares issued to her. This is a reasonable inference from all the master's findings and should not be set aside or reversed merely for the reason that the defendant claimed the stock was hers as well before as after the reorganization. The transaction is not executory but is fully performed; and if the plaintiff, believing (as he now contends) that he was the equitable owner of the original stock, participated in an issue of new stock therefor to the defendant, intending to vest her with full ownership, that result was accomplished, even though she may have at the same time thought herself to be the equitable as well as the legal owner of the original shares. The transfer of title of personalty is largely a question of intent. *Cox* v. *Jackson,* 6 Allen, 108. *Towne* v. *Davis,* 66 N. H. 396. Williston on Sales, §§ 261, 262.

It is plain that both parties intended that the defendant Sawyer should own the new shares. If so, it is immaterial that she believed that she also owned the old shares. The trial judge rightly found " as a fair inference from the facts found by the master," " that at the time of the reorganization it was agreed and understood between the plaintiff and the defendant Sawyer that thereafter each should own one half of the common stock, and that the two hundred shares issued to the defendant Sawyer was issued in pursuance of that agreement and are her property." We adopt the findings of the trial judge. It is manifest that the defendant is the owner of the two hundred shares of common stock held by her.

The contention of the plaintiff, that the answer of the defendant was not sufficient to permit proof of the reorganization of the corporation and the issuance to her of the two hundred shares of stock as her own property, cannot be sustained. The issue of the ownership of stock originally as well as at the time of the reorganization is plainly raised by paragraphs 4, 7, 8, and 12 of the defendant's answer. These paragraphs adequately and effectively raise all subsidiary issues as to how, when, and in what way the defendant became the owner of the shares at the various times when she contends she owned them. *Marra* v. *Bigelow,* 180 Mass.

48. Accordingly the defendant's rights are not affected by the denial of the motion to amend her answer. The allowance of the motion to recommit was not error, but rested in the sound discretion of the court.

In view of what has been said, it follows that the defendant's third, fifth, sixth, seventh, eighth, and ninth exceptions to the report were rightly sustained, and the interlocutory decree sustaining those exceptions and recommitting the report must be affirmed. The allegations contained in the second and third bills of complaint are not sustained — they were therefore dismissed rightly. The final decree in each case dismissing the bill is affirmed with costs.

*So ordered.*